# Michael C. McDonald v. Silas F. Miller, Intervening Petitioner.

1. RECEIVER—*Equity Jurisdiction Does Not Extend Beyond a Sale of the Assets.*—The jurisdiction of a court of equity under whose orders a receiver, appointed upon a creditor's bill, makes sale of the debtor's

assets, does not extend to the enforcement of engagements made by a purchaser, for the subsequent protection or use of the property bought at such sale.

2. EQUITY JURISDICTION—*Over a Purchaser at a Receiver's Sale.*— The fact that the purchaser at a receiver's sale is also the complainant in the suit, does not serve to retain jurisdiction over him as a purchaser, with reference to his subsequent conduct of the business, or with third persons, he having performed his contract of purchase and received possession of the property.

3. RECEIVER'S SALE—*When a Creditor Purchases.*—As a purchaser at a receiver's sale, a creditor takes the title to the property bought by him, the same as he would have done if he had been a stranger to the suit.

**Memorandum.**—Creditor's bill, etc. Appeal from the Circuit Court of Cook County; the Hon. SAMUEL P. MCCONNELL, Judge, presiding. Heard in this court at the March term, 1894, and reversed. Opinion filed June 4, 1894.

The opinion states the case.

KNIGHT & BROWN, attorneys for appellant.

PADDOCK, WRIGHT & BILLINGS, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

A receiver of The Daily Globe Publishing Company, a corporation, was appointed under a creditor's bill, brought by the appellant upon a judgment for $109,697.98, recovered by him at law against said corporation, and the receiver was ordered to continue the business of the corporation. The appellant alleged in his bill the insolvency of the corporation, but that it owns property, consisting of machinery, tools, etc., and a leasehold interest in the premises, Nos. 116 and 118 Fifth avenue, Chicago, and that all of said tools, machinery, stock on hand and leasehold interest, when taken together, constitute a plant for the publishing of a daily newspaper.

Shortly after his appointment, and on April 5, 1893, the receiver filed his petition, setting forth that the lease under which the corporation was in possession of the premises Nos. 116 and 118 Fifth avenue, Chicago, would expire on

the 30th day of that month; that the business of the corporation was being carried on in said premises, and that in order to continue the business it was necessary that a new lease of said premises be entered into.

And thereupon, on the day of the filing of said receiver's petition, the Circuit Court entered an order directing the receiver " to obtain and execute as lessee, as such receiver, in the name of The Globe Publishing Company, a lease of the premises Nos. 116 and 118 Fifth avenue, Chicago, Cook county, Illinois, in the usual form, from the first day of May, 1893, until the 30th day of April, 1895, for the aggregate rental of twelve thousand dollars, payable in monthly installments of five hundred dollars each, unless objections be filed in three days."

No objections being interposed, the receiver did, on April 8, 1893, make a lease with the appellee.

The lease that was executed ran from the appellee, by his agents, as party of the first part, to " The Daily Globe Publishing Company, party of the second part," and was signed by or for the appellee, and by " The Daily Globe Publishing Company, by Harry Wilkinson, receiver."

The premises described in the lease constitute less than the whole of the premises mentioned in the order empowering the receiver to make a lease, but no point is made on that score.

In addition to the usual covenants, the lease contained the following :

" Said second party shall have the right to sublet part of said premises for the purposes of legitimate business, and said second party shall have the right to assign this lease upon the written consent of said first party, and said first party agrees that he will give his written consent at any time during the term herein granted, upon application of said second party, and for legitimate business purposes, said second party to remain liable for the performance of the conditions of this lease."

It was subsequently made to appear to the court that the best interest of the estate required that the receiver should

sell the assets, and on August 31, 1893, an order was entered directing the receiver to sell at public auction " the entire plant, tools, machinery, stock on hand, office fixtures and good will " of the corporation, and that the appellant might apply on account of any bid made by him therefor, the amount of his said judgment against the corporation and the amount of money loaned by him to the receiver.

Some objections to the order of sale, which, however, were subsequently overruled, having been interposed by one or more intervening petitioners, who sought to attack the *bona fide* character of the indebtedness and judgment upon which appellant had filed said creditor's bill, the order of sale was, on September 8th, so far modified as to require the appellant, in case he should become a purchaser at the sale, to give such bond as the court might fix, conditioned to pay to the receiver the amount of his bid, or the excess of such bid over and above the amount for which his said judgment should be held to be valid.

In pursuance of the order of sale, the receiver duly advertised, and on September 15th sold the property specified in the order of sale, to the appellant, for the sum of $20,000; and on September 28th, the receiver reported the sale, and that appellant had executed the bond required by the modifying part of the order of sale, and brought the bond into court, which report and bond were duly approved on September 30th.

On October 14, 1893, leave was given to the appellee to intervene in said cause, and he thereupon filed his petition, setting forth the execution of the lease aforesaid, and that rent for the months of August, September and October was in arrears and unpaid, and praying that the receiver be ordered to pay said arrears of rent.

To that petition the receiver answered admitting that the rent was in arrears, but claimed that by reason of the sale on September 15th, and his delivery of possession to the appellant, he was relieved from all obligation to pay rent after that date.

Thereupon the court ordered the receiver to pay the rent

up to and including September 15th, without prejudice to the right of appellee to renew his motion against either the receiver or the appellant for any balance of rent claimed by appellee.

On December 15th appellee again called up his petition, and obtained a rule against appellant to show cause why he should not pay rent under said lease.

To that rule appellant made answer and set up that he purchased, at the sale by the receiver, certain personal property belonging to the estate of said corporation; that he immediately took possession of the same and occupied the premises wherein the property was located, being the premises for which rent was claimed, until on or about October 24, 1893, when he sold all of said property and delivered possession thereof to the purchasers, and that he has not since said October 24th controlled, occupied, used or received the beneficial enjoyment of said premises, and prayed that the rule against him be discharged. The cause coming on to be heard upon the petition of appellee, the answer of appellant, and sundry affidavits read on both sides, it was ordered that appellant pay to appellee the sum of $1,750 as rent for the last half of September and the months of October, November and December, 1893.

This appeal calls in question the order against appellant to pay said $1,750. Nothing that is contained in the affidavits affects the question that is raised by the pleadings and order.

We are unable to discover from the record any theory upon which the order complained of may be justified.

The jurisdiction of a court of equity under whose orders a receiver appointed upon a creditor's bill, makes sale of the debtors' assets, does not extend to the enforcement of engagements made by a purchaser at such sale, for the subsequent protection or use of the property bought at such sale.

The fact that the purchaser is also the complainant in the bill does not serve to retain jurisdiction over him as a purchaser with reference to his subsequent conduct of the business, or with third persons, he having performed his

contract of purchase and received possession of the property. The bond that appellant, as a purchaser, gave to respond to the receiver in case his judgment should be held invalid, was not for appellee's benefit in any way, until, at least, the said judgment shall have been successfully impeached.

Whether the rent for which the receiver engaged, under the lease, was a charge upon the assets of the estate that came to the receiver's hands is not a question here, for nothing in that regard is now asked of the receiver.

Neither does it matter whether the "plant" of the newspaper corporation that was sold to appellant, included the lease. In the event that it was so included, and thereby the appellant became the assignee of the lease, the remedy of appellee for the recovery of rent under the lease must be found elsewhere than in this suit; and so, also, if appellee's remedy is for use and occupation of the premises.

As a purchaser at the receiver's sale, the appellant took the title to the property bought by him exactly the same as he would have done if he had been a stranger to the suit; and the court that ordered the sale lost all jurisdiction over him as a purchaser and over the subject-matter of the purchase, as soon as he completed his purchase, took possession of the property, and the court had approved the sale.

If this suit might be kept open for the enforcement of the rent ordered to be paid by the appellant, it could with equal propriety be resorted to for all future accruing rent.

We have no concern with the remedy that appellee may have, either against the appellant, as assignee of the lease, or upon an independent obligation, or against the receiver, under the lease, for neither of such questions are before us.

When the property was, by the receiver's sale, converted into money, or its equivalent, whatever claims may have existed as a charge against the assets of the estate, could only be asserted against the receiver.

The Circuit Court had full jurisdiction to entertain such claims and do exact justice with reference to them, but it had no jurisdiction to settle disputes between the purchaser of the property of the estate and a third party, growing out of subsequent dealing with the property.

There is no question in this record as to the duty of the court to prevent its receiver from repudiating his contract obligations.

The only question is, may the court follow up a purchaser at its receiver's sale, and enforce against him an express or implied undertaking entered into by him, as such purchaser, with a third party subsequent to the purchase? In so doing we think the Circuit Court exceeded its jurisdiction.

Holding as we do, that there is no liability of the appellant to the appellee in this proceeding, the order of the Circuit Court will be reversed, without remanding the cause.